FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAY -1  PM 1:26

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EDWARD MILLER | CIVIL ACTION |
| Plaintiff | NO. 06-2334 |
| VERSUS | SECTION  SECT. A MAG. 1 |
| NATIONWIDE LIFE INSURANCE COMPANY | MAG. |
| Defendant | |

### COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Edward Miller ("Miller") who files this Complaint against Defendant, Nationwide Life Insurance Company ("Nationwide") and respectfully represents:

### PARTIES

I.

Miller is a person of the full age of majority and

1

a resident of the State of Louisiana until hurricane Katrina caused him to move to the State of Maryland where he is presently residing.

II.

Nationwide is a stock life insurance company organized under the laws of the State of Ohio and doing business in the State of Louisiana.

## JURISDICTION AND VENUE

III.

This action arises under the Securities Act of 1933, 15 U.S.C. §77a, et seq., including but not limited to: 15 U.S.C. §77e and 15 U.S.C. §77j; 17 CFR 270.22C-1; and breach of contract.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1337.

## FIRST CAUSE OF ACTION

NATIONWIDE BREACHED ITS CONTRACT BY CHARGING A FEE

IV.

Miller purchased two variable annuity contracts from Nationwide. At the time Miller purchased the contracts, Miller was a resident of Louisiana and the contracts were entered into in the Eastern District of Louisiana; accordingly, venue is proper in the Eastern District of Louisiana.

V.

One of the contracts Miller purchased from Nationwide was for a non-qualified annuity issued on or about June 26, 2001 and the other was for Miller's 403b retirement plan issued on or about July 3, 2001. Contributions were made to the 403b retirement plan via payroll deductions (a third account was incorrectly established but was later consolidated into the first 403b account). The two remaining

contracts are Variable Annuity 015580932 (403b) and Variable Annuity 015580933.

VI.

Nationwide delivered its prospectus to Miller prior to the purchase and upon which Miller relied in making the purchases. The Prospectus was dated May 1, 2001. The Prospectus specifically provided that: "*The exchange and transfer rights of individual contract owners will not be modified in any way when instructions are submitted directly by the contract owner, or by the contract owner's representative (as authorized by the execution of a valid Nationwide Limited Power of Attorney Form).*" (Italics in Original). This sentence was emphasized in the original prospectus by being in italics; it was this sentence that induced Miller to purchase the annuities in question.

VII.

The contract for Miller's purchase of the variable annuity contracts stated that Miller had the right to: "transfer variable assets among the various funds without a charge;" and that Miller's "rights under this Certificate Agreement cannot be taken away from you."

VIII.

The contract further provides that:

> [t]he Company will deduct a Mortality and Expense Risk Charge equal, on an annual basis, to not greater than 1.25% of the daily net asset value of the Certificate Owner's Variable Account. This deduction is made to compensate the Company for assuming the mortality risks and expense risks under this Contract....The 'expense risk' involves the guaranty by the Company that it will not increase charges for administration of the Contract regardless of the Company's actual administrative expenses.

IX.

Beginning in May of 2002, Nationwide began to charge a transaction fee for variable trades Miller

had previously made without being charged a fee.

## X.

Nationwide breached the contract by charging Miller a fee for "transfer[ing] variable assets among various funds". Nationwide reduced the contract balance by an amount equal to one percent (1%) of the amount transferred out of a sub-account when the funds had been in the sub-account for less than 60 days.

## XI.

Nationwide announced its intention to charge Miller a fee for transfers of variable assets among various funds when the funds had been in the sub-account for less than 60 days. Nationwide informed Miller that it would reduce the contract balance every time Miller transferred funds out of a sub-account when the funds had been in the sub-account for less than 60 days by an amount equal to one percent (1%) of the amount transferred out of a sub-account.

XII.

Nationwide's breach of contract required Miller to change his investment strategy, to his detriment, so as to avoid incurring this fee.

XIII.

In particular, Miller no longer invested in the sub-accounts for which he had been notified a fee would be charged. This appreciably reduced the return expected by Miller from Miller's intended strategy when Miller purchased the contracts. Nationwide's breach reduced Miller's contract value.

XIV.

Miller specifically purchased the variable annuity contracts from Nationwide because the contracts gave Miller the right to: "transfer variable assets among the various funds without a charge." Miller's contract with Nationwide clearly stated that Miller's "rights under this Certificate Agreement cannot be

taken away from you."

## SECOND CAUSE OF ACTION

NATIONWIDE BREACHED ITS CONTRACT WITH MILLER BY DENYING MILLER TO MAKE TRANSFERS BY TELEPHONE

XV.

Miller's contracts with Nationwide also provide that Miller has the right to: "make telephone exchanges where permitted by state law."

XVI.

Initially, Nationwide allowed Miller to make telephone exchanges; however, Nationwide later breached its contract by refusing to accept phone orders.

XVII.

Up to January 2005, Nationwide allowed Miller to make unlimited telephone and internet transfers. Then Nationwide informed Miller that Nationwide was going to limit the number of telephone and internet

transfers. Later Nationwide caused a notice to appear on its website stating that there was a limit. Nationwide caused to appear on the transfer page of the web site a count of the transfers made so far that year and a statement that the number would be limited to 20 per year. Nationwide mis-stated the terms of its contract to Miller and other policy holders by stating that only 20 telephone exchanges would be allowed. Nationwide violated Louisiana Insurance Law.

XVIII.

Nationwide breached its contracts with Miller when Nationwide denied Miller the right to make telephone exchanges because the Certificate Agreement specifically states that Miller had "the right to ... make telephone exchanges where permitted by state law" and that Miller's "rights under [the] Certificate Agreement cannot be taken away from [him]."

XIX.

On or about February 26, 2004 funds were removed from both of the Miller accounts, and a series of entries made that dated back to 7/2/2003. The removal of these funds violates the part of the Investment Company Act that forbids "conversion" of funds.

### THIRD CAUSE OF ACTION

NATIONWIDE VIOLATED 17 CFR 270.22C-1

XX.

After Miller protested and requested an explanation for the removal of Miller's funds. The explanation offered by Nationwide was that the price of a transaction in the Dreyfus International fund had been changed and Nationwide removed the funds from the account to recognize the new changed price. To the extent that this statement by Nationwide is correct this action violates the relevant SEC regulation (Rule 22c-1 -- Pricing of Redeemable Securities for

Distribution, Redemption and Repurchase ), 17 CFR 270.22C-1, which reads:

> No registered investment company issuing any redeemable security, no person designated in such issuer's prospectus as authorized to consummate transactions in any such security, and no principal underwriter of, or dealer in, any such security shall sell, redeem, or repurchase any such security except at a price based on the current net asset value of such security which is next computed after receipt of a tender of such security for redemption or of an order to purchase or sell such security.

### XXI.

The redemption price must be "price based on the current net asset value of such security which is next computed after receipt". The net asset value used to justify removing funds from the Miller accounts appears to be one that was calculated by Nationwide sometime in 2004 and is clearly not the one next computed after receipt of the July 2, 2003 order.

11

## FOURTH CAUSE OF ACTION

NATIONWIDE VIOLATED THE SECURITIES ACT OF 1933

### XXII.

On or about June 7, 2005, Miller purchased about $1,886,570.83 worth of Federated GVIT high income bond fund at $10.20 per share paying for the shares via exchange of units in the Nationwide sub-account representing an interest in Oppenheimer Capital appreciation fund valued at $1,886,570.83.

### XXIII.

At the time of this purchase on June 7, 2005, Nationwide had not provided Miller with the prospectus dated May 1, 2005; accordingly, Miller was unaware that Nationwide would charge a two percent (2%) redemption fee if the shares were sold prior to a certain date.

XXIV.

On or about June 14, 2005, Miller sold these funds and Nationwide charge Miller's account numbered 015580933 a two percent (2%) fee amounting to $18,837.03. In exchange for these funds Miller received an interest in the Federated GVIT high income bond fund, share in the Fidelity VIP3 value strategies portfolio valued at $1,864,865.55.

XXV.

The value that Miller received when he sold the funds was considerably less than the value of the assets that he surrendered valued at $1,886,570.83. Miller suffered the loss of $21,705.28 which is the difference in the values of these shares.

XXVI.

Miller would not have purchased the interest in the Nationwide sub-account representing an interest in the Federated bond fund if Miller had been provided

with the prospectus that Nationwide is required by law to provide under the Securities Act of 1933, 15 U.S.C. §77a et seq.; accordingly, Nationwide is liable to Miller for the losses that he suffered.

## DAMAGES

### XXVII.

Nationwide breached its contracts with Miller by: (1) charging Miller a fee for transferring variable assets among various funds; and (2) denying Miller the right to make telephone exchanges. Nationwide's breach of contract caused Miller substantial economic damages and continue to cause Miller damages, including but not limited to damages suffered by Miller because he had to change his investment strategy to avoid paying transfer fees. The amount of Miller's damages will be shown at trial.

## XXVIII.

Nationwide also violated the Securities Act of 1933 by failing to provide Miller with the prospectus dated May 1, 2005 and violated Rule 22c-1 of the SEC Regulations, 17 CFR 270.22c-1 by converting funds in Miller's account, both of these violations by Nationwide caused Miller to suffer economic damages to be shown at trial.

WHEREFORE, Miller prays that after due proceedings there be judgment in his favor against Nationwide:

1. Ordering specific performance of the contract including restoration of the ability to make transfers by telephone and internet such as Miller enjoyed prior to Nationwide's default.

2. Prohibiting Nationwide from charging any fees for transferring out of a sub-account, or accomplishing the economic equivalent of such a fee by a subterfuge, including crediting accounts

   with less than the full value of transfer made.

3. For all damages suffered by Miller as a result of Nationwide's breach of the contracts, including but not limited to damages that arose from the imposition of short term trading charges and the threat of such charge, said damages to be in such amount as are required to put Miller in the position he would have been in if the contract had been honored.

4. For all damages suffered by Miller as a result of Nationwide's refusal to accept phone and internet transfers, and for Nationwide's threats to violate the contract provisions as provided in the contract, said damages being sufficient to place him in the same economic position as if Nationwide had fully honored the contract.

5. For all damages suffered by Miller as a result of Nationwide's violation of the Securities Act of

1933.

6. For all damages suffered by Miller as a result of Nationwide's violation of 17 CFR 270.22c-1.

7. Ordering Nationwide to provide Miller with a full accounting for all funds removed from his account.

8. A full restating of the account to restore it to the position as if all transactions had been made at the net asset value next computed after receipt of a tender of such security for redemption.

9. Awarding Miller all costs and attorneys' fees.

10. Awarding all such other and further relief as may be just and proper.

Respectfully submitted,

James A. McPherson (LA#09381)
Mary S. McPherson (LA #25239)
McPherson & McPherson
2434 Highway 53 South
Poplarville, Mississippi 39470
Telephone: (601)795-0379
Facsimile: (601)795-6627
E-mail: mschillesci@yahoo.com
Attorneys for Edward Miller